# EXHIBIT A

JOHN S. PURCELL (SBN 158969)
john.purcell@afslaw.com
JAKE GILBERT (SBN 293419)
jake.gilbert@afslaw.com
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401

Attorneys for Plaintiffs
TAYLOR WHITLEY AND
WTF.INDUSTRIES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TAYLOR WHITLEY, and
WTF.INDUSTRIES, LLC,

        Plaintiffs,

    v.

CLARE MAGUIRE, JAKE
NYGARD, ANTONIUS
WIRIADJAJA, DONGLEE HAN,
and DOES 1-10, Inclusive.

        Defendants.

Case No.

**COMPLAINT FOR
(1) COPYRIGHT INFRINGEMENT;
(2) VICARIOUS AND/OR
CONTRIBUTORY COPYRIGHT
INFRINGEMENT;
(3) NEGLIGENT
MISREPRESENTATION - HAN;
(4) NEGLIGENT
MISREPRESENTATION - OTHERS
(5) BREACH OF IMPLIED
CONTRACT;
(6) BREACH OF FIDUCIARY
DUTY;
(7) DISSOLUTION OF IMPLIED
PARTNERSHIP;
(8) UNJUST ENRICHMENT;
(9) CONVERSION;
(10) DEFAMATION; AND
(11) UNFAIR COMPETITION.**

**DEMAND FOR JURY TRIAL**

Plaintiffs Taylor Whitley ("Whitley") and WTF.Industries, LLC ("WTF.Industries") (collectively "Plaintiffs") complain and allege against Clare Maguire ("Maguire"), Cake Nygard ("Nygard"), Antonius Wiriadjaja ("Wiriadjaja"), Donglee Han ("Han"), and DOES 1-10 (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1. This action arises from Plaintiff Taylor Whitley's wrongful ouster from the digital art community he founded and nurtured, ultimately resulting in the loss of years of his own work, along with an extensive list of lucrative projects which he laid the groundwork to create.

2. Whitley, in the same vein as other entrepreneurial artists, used his name and connections in the digital art world to create and sell art using Whitley's curated internet community of collectors and collaborators. However, he was betrayed when several people he chose to include in his community later usurped Whitley's access to and control of that community, renamed it, and exploited it for their own pecuniary gain. This was part of their scheme to convert Whitley's collectors, fans, and other artists working on community projects all while infringing Whitley's intellectual property, and keeping him and the company he formed from reaping the considerable financial rewards that flowed from the work and community he created.

3. Defendants also appear to have engaged in a campaign of defamation to further injure Plaintiff's reputation and presumably to prevent him from competing with them along with other digital art contacts he has.

4. As a result of Defendants' tortious and wrongful conduct, Whitley and his clients and collectors lost access to years of collected art and music assets, and Whitley lost access to confidential business plans and future projects, his client list, and engagement data. Further, the community that Whitley created lost tremendous goodwill associated with it by others in the digital art world, and prices associated with community projects collectively went down. Such conduct can only be remediated with monetary damages to compensate Plaintiff for his economic losses,

payment to compensate him for revenue from projects he was entitled to participate in or recoup his investment in, and injunctive relief to stop Defendants from continuing to injure Plaintiffs' good name and that of his representatives and employees.

### THE PARTIES

5. Plaintiff Taylor Whitley is an individual resident of Arizona.

6. Plaintiff WTF.Industries LLC is a limited liability company organized under the laws of the state of Delaware and with its place of operations in Arizona.

7. Defendant Clare Maguire, on information and belief, is an individual residing in England.

8. Defendant Jake Nygard, on information and belief, is an individual residing in Minnesota.

9. Defendant Antonius Wiriadjaja, on information and belief, is an individual residing in New York City, New York.

10. Defendant DongLee Han, on information and belief, is an individual residing in Los Angeles, California.

11. The true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said defendants by fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when they are ascertained.

### JURISDICTION AND VENUE

9. This action arises in prominent part under the Copyright Act of 1976, Title 17 U.S.C. §101 *et seq.*

10. This Court has federal question jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §§1331 and 1338(a) and (b). This Court has supplemental jurisdiction over the remaining causes of act pursuant to 28 U.S.C. §1367(a) because the other claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. Further, this

COMPLAINT

Court has jurisdiction under 28 U.S.C. §§1332(a)(1) because there is complete diversity of citizenship between Plaintiffs and the various Defendants and the amount in controversy is over $75,000.

11.     Plaintiff is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Defendants because Plaintiffs and Defendants have caused digital art products described herein to be advertised, promoted, and sold in the State of California and this judicial district.

12.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because Defendants' tortious conduct has occurred in this judicial district and a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

### PLAINTIFF CREATES A THRIVING ONLINE ARTS COMMUNITY

13.     Plaintiff Whitley is a creative artist working in visual, performance, and digital mediums. He has been a Voisey App featured producer and has spoken at art conferences such as NFT NYC Conference due to his digital art world renown. His work has been displayed all over the world including at the Official MF Doom CryptoVoxel Gallery, the Sino NFT project and Start Art Gallery in Hong Kong, and at The Global NFT Art Exhibition in Dubai. He has developed thriving social media accounts including on Instagram (Tayl0rWTF – 6,000 followers, Caked Apes – 14,800 followers), Twitter (Tayl0rWTF – 38,000 followers, Caked Apes – 31,700 followers), and has led Discord groups with thousands of members each.

14.     Beginning in spring 2021, Whitley began promoting a new online community for digital artists using his contacts on social media platforms and in the Non-Fungible Token ("NFT") community[1]. During this time Whitley hosted and

---

[1] NFTs are digital assets that correspond to a unique digital or real world item and serve as a proof of ownership or bill of sale for that item by describing the item in metadata. Transactions involving NFTs are recorded to the same distributed digital ledger as common cryptocurrencies.

1    contributed to online social 'rooms' on Clubhouse (a social media app where artists,
2    collectors and other individuals met and spoke about NFTs and the crypto art
3    economy).

4        15.    In June of 2021, Whitley set up a Discord server entitled discord.art (
5    the "Art Discord") and purchased a corresponding web domain (https://discord.art/).
6    A Discord "server" is an online community commonly focused on a single topic or
7    interest, and those servers can contain multiple "channels" which act as subsets for
8    the overall topic that the server was organized for.

9        16.    Discord is an internet platform which provides persistent voice and chat
10   services, as well as digital distribution via the transferal of media and other computer
11   files. It has approximately 350 million total registered users, 150 million monthly
12   active users, and commonly serves as the central organization, marketing, and
13   communications hub for its users.

14       17.    NFT projects commonly use Discord to organize their community of
15   buyers and other interested parties. Discord serves as the message board for formal
16   announcements, promotions and giveaways, votes on community issues, and conduit
17   for other business. Moreover, Discord is where artists and platform can communicate
18   directly with their collectors.

19       18.    Using his existing notoriety as a digital artist and by spending hours on
20   Clubhouse and the Art Discord, Whitley was quickly able to attract users to the Art
21   Discord, which had hundreds of users within weeks of launching. Whitley also began
22   using the Art Discord to promote his own artwork and digital goods for sale. Among
23   Whitley's items for sale were his Floppy Disk editions, a collection of digital art and
24   music assets which others could use in their own projects.

25       19.    Through his efforts, Whitley quickly became a prominent NFT artist and
26   stood at the center of the Art Discord - one of the most important platforms for NFT
27   artists and their collectors - all before any Defendant became involved.
28   ///

**PLAINTIFF STAFFS THE COMMUNITY AND PLANS FUTURE PROJECTS**

20.     After launching the Art Discord, Whitley was contacted by Defendant Wiriadjaja (using his handle "Foodmasku"). Wiriadjaja asked Whitley if Whitley would allow him to open up a channel on the Art Discord in order to market Wiriadjaja's NFTs, as Wiriadjaja lacked a comparable platform. Whitley agreed and created the channel.

21.     Later in June 2021, as the Art Discord's needs grew, Whitley hires Trisha Reda ("Reda") to act as a community manager for the Art Discord and others to build a website to accompany the Art Discord and automated moderation tools. Reda manages social media accounts related to the Art Discord and markets artists that are on the Art Discord . For the first time, the Art Discord was used to promote the work of other artists and has a small paid staff to do so.

22.     Throughout the next few months, Whitley exhaustively marketed the Art Discord , the community, and the artists who were now contained within each. Wiriadjaja helped Whitley promote the Art Discord, and the two grew close.

23.     On August 23, 2021, Whitley, feeling the effects of all of his work marketing and promoting the Art Discord and the community in general – which now contained thousands of members, decided to take a temporary step back from active moderation and rest. He transferred "ownership" of the Art Discord to Wiriadjaja in an effort to relieve his day to day obligations.

24.     It is important to note that "owner" in the context of Discord the web-platform does not reflect legal ownership, or even an intent to alienate one's rights to the platform. Instead, the owner has the highest level of access and control of anyone presently existing on that server. Owners can dole out permissions to other users, including promoting users all the way up to Administrator, which allows unfettered access and control to the server, second only to the Owner herself. Administrators can moderate the chat and spoken word tools, and membership lists, and even change server settings should anything need changing or fixing. Whitley never intended to

leave the Art Discord, and remained instrumental in hiring and promotion decisions after transferring "ownership."

25.     Wiriadjaja agreed, and began maintaining continuity with the community. Importantly, Whitley did *not* remove from himself any administrative privileges or control of the Art Discord, he merely transferred the "ownership" to Wiriadjaja temporarily on the web-platform for the Art Discord and then he gave Wiriadjaja "Administrator" access to the website. No changes were made as to ownership or control of the website or any other properties.

26.     In fact, Whitley directly supervised and led the hiring of 24 people - Wiriadjaja  only recommended a single hire. Whitley is also primarily in charge of compensating the staff - including Reda, who continued managing the community and was handsomely rewarded in the form a Mutant Ape NFT (valued at the time between $50,000 and $100,000).  Whitley, along with his contributors, began discussing the possibility of taking the Art Discord, and the community in general, to the public as a means of increasing the potential scope of the project and introducing it to new collectors and users.

27.     By mid-October 2021, there the Art Discord was booming – thousands of members were contributing to the community and a full staff were in place to manage. Whitley announced promotional efforts for a number of artists and projects hosted by the Art Discord, the sales of which would benefit Whitley and Wiriadjaja and the Art Discord. Wiriadjaja and Whitley agreed that they were "co-creators" of the Art Discord and that each had played critical roles in its growth and development.

28.     The Art Discord continued to grow – Defendant Maguire was hired as a community manager on or about October 19, 2021.

29.     Throughout November, the Art Discord supported multiple art releases, new artist channels, and continuing growth in membership, artists and NFT sales, and excitement for the Art Discord and the group as a whole. At this point, Wiriadjaja, Maguire, and Whitley were working in concert along with the other staff

members to promote the various NFT releases and continue developing the Art Discord, the community, and the value of each. Defendant Han joined at the end of November 2021.

30.    Late in 2021, Whitley formed Plaintiff WTF.Industries to function as a digital art agency, which would be responsible for developing, marketing, promoting, and profiting from the sales of digital assets, like NFTs and other collections. WTF.Industries would take revenue cuts of the projects it supported, whether that was with the team that Whitley was already working with or third parties who sought to have institutional support for their releases. Whitley is the sole member of WTF.Industries.

**PLAINTIFFS AND DEFENDANTS LAUNCH THEIR OWN NFT COLLECTION AND PLAINTIFF IS OUSTED FROM HIS ARTS COMMUNITY**

31.    In line with Whitley's ambitions, on December 16, 2021, the Art Discord was rebranded to "WTF Industries".

32.    On the same day, Han's NFT project Pixel Tots launched. Han and Whitley agreed that Whitley and WTF.Industries would market Pixel Tots for two months in exchange for 25% of revenue from the initial launch, followed by 60% of all revenue earned through secondary sales[2] and 60 NFTs from the collection. Despite this agreement, Whitley has never received any money from the Pixel Tots sale nor is he aware of WTF.Industries receiving a share. To date hundreds of Pixel Tots NFTs have been transacted generating tens of thousands of dollars of revenue for the project.[3]

_____

[2] NFTs are often bought and transferred using the Ethereum cryptocurrency system. That system allows for the initial seller to automatically receive a percentage royalty on subsequent sales of the same NFT. Therefore, creators are incentivized to continue marketing to their buyers and collectors, as maintaining high resale prices results in creators getting larger royalty payments.

[3] Pixel Tot sales take place on the OpenSea NFT sales platform, and sales records are publicly recorded and available online: https://opensea.io/collection/pixeltots?tab=activity.

33.     At the same time, Whitley and Defendant Nygard readied their own NFT collection for launch entitled Caked Apes. Caked Apes were designed and created by Whitley and Nygard as a collection of 8,888 NFTs, each representing unique and randomly generated NFTs which use traits from other NFT projects. Whitley invested nearly $300,000 of his own money to launch the product and his intellectual property.

34.     Specifically, Whitley created a series of logo designs which he uses to identify himself and his work to third parties. ("the Subject Design"). Representative samples can be seen below:

  

35.     Whitley and Defendants put up a website (https://www.cakedapes.wtf/), and social media accounts (https://twitter.com/CakedApes, https://www.instagram.com/CakedApes/). The Caked Apes project was put on OpenSea to sell (https://opensea.io/collection/cakedapesofficial) and opened for presale on January 10, 2022. Each of which identified both Whitley and Nygard as creators.

36.     Whitley and Defendants Maguire, Nygard, and Wiriadjaja agreed that Whitley was to receive 10% of all revenue generated from Caked Apes primary and secondary sale royalties, and WTF.Industries was to receive 30% of all Caked Apes primary sales and 45% of all Caked Apes secondary sale royalties.

37.     Unbeknownst to Whitley at the time he agreed to the above revenue

split, Defendants Maguire, Nygard, and Wiriadjaja created a "multi-signature wallet" to receive funds derived from the Caked Apes NFT launch and send Whitley the 10% he was due.[4] However, on information and belief, Defendants Maguire, Nygard, and Wiriadjaja failed to set the multi-signature wallet to automatically distribute revenue from the Caked Apes NFT project to a wallet owned by WTF.Industries for its share of the revenue.

38.    Since launch, the Caked Apes NFTs have sold out of their original run, generating an estimated $1.9 million in primary sale revenue and $225,000 in royalties from secondary sales.

39.    To date, WTF.Industries has received none of the revenue generated by Caked Apes. On information and belief, all revenue that was not sent to WTF.Industries either remains in the multi-signature wallet or has been distributed to and used by Defendants. Neither Whitley nor WTF.Industries has authorized any expenses be paid with Caked Apes NFT project revenue.

40.    Once Whitley learned that WTF.Industries had not received any Caked Apes NFT revenue and that Defendant Maguire had contacted WTF.Industries accountants to add directors to WTF.Industries, Whitley directed his representatives to convene a meeting of Whitley and Defendants to resolve any disputes related to the WTF.Industries brand, the projects, revenue splits, and roles across each.

41.    Defendants never responded and this meeting never took place.

42.    On January 28, 2022, Whitley was removed from all social media accounts related to the Caked Apes NFT project. On January 30, 2022, Whitley was removed from the Art Discord.

43.    Whitley uses the Art Discord as his source of revenue and as marketing for both his projects and as a means to support other artists. The Art Discord contains significant amounts of Plaintiff's art and music assets, data and contact information

---

[4] A multi-signature wallet is software used to send and receive cryptocurrencies whereby at least two authorized individuals must approve each transaction.

about the community and collectors, a client list, and his future art project plans - crucial data for his ability to work as an artist. The Art Discord also contains communications between Whitley and Defendants, financial records, and other information at issue here.

44. Further, in the time since, social media accounts associated with Nygard and Maguire and numerous anonymous social media accounts have harassed and made false and slanderous statements about Whitley to the public, and to specific prominent individuals and entities in the digital art world. These messages make plainly false claims about Whitley. Representative examples can be seen below:

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




claremaguire · Instagram
52K followers · 171 posts
You don't follow each other on
Instagram

**View profile**

Tuesday 5:10 PM

Hi escargot, I do not
know you.

Can you tell me what it is
I said about you because
i know Taylor despises
you but I don't know who
you are.



Accept message request from clare
maguire **(claremaguire)**?

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16
17
18



19
20
21
22
23
24
25
26
27
28





45.    Maguire has previously admitted to Plaintiff that she stood ready to use anonymous social media accounts in other ways, such as to build hype for the Art Discord or its projects, or even for nefarious tasks like harassing social media profiles she does not like. On information and belief, these slanderous messages are made directly by Maguire, by anonymous accounts she controls, or at her behest, and were made to impact Plaintiff's reputation in the art world and among potential collectors. Reputation is particularly important here, as the value of NFT projects Plaintiff promotes or sells directly are often directly related to his reputation among collectors and among the broader populace who rely upon that reputation (and the scarcity of the desired objects) to lead to high valuations and lucrative resales.

46.    Despite all of the above malfeasance, in order to attempt to maintain the

sinking value of Plaintiff's assorted investments, the value of the Art Discord overall, and the prices of art promoted by the Art Discord, Plaintiff has continued to pay required maintenance fees for the Art Discord in the hope that he would one day be able to retain its goodwill and the assets stored therein.

47. Whitley has applied for a United States Copyright Registration covering the Subject Design, identified as application case number 1-1123483811.

48. Many of the Caked Ape NFTs incorporate the Subject Design, including, but not limited to Caked Ape #787, Caked Ape #5099, and Caked Ape #1798 seen below, each of which use the Subject Design essentially as a watermark in the background of the image. Whitley's authorization for the use of the Subject Design in the Caked Apes NFT project was contingent on the revenue split to being paid to him and WTF.Industries, as well his continued involvement with and management of the Caked Apes NFT project.

| Subject Design | Infringing Use |
|---|---|
|  |  |



| Subject Design | Infringing Use |
|---|---|

49.    Whitley is informed and believes, and thereon alleges that Defendants have sold Caked Ape NFTs incorporating the Subject Design since Caked Aped NFTs launched on January 10, 2022.

50.    Now, Plaintiff seeks judicial intervention into the operation of his potentially lucrative art community in order to recover Plaintiff's rightful share of proceeds from the Caked Apes NFT project, and for Whitley's loss of access to the Art Discord and to remedy Defendant's wrongful acts which have not only injured the value of the community itself, but the individual projects, and Whitley's very reputation and future involvement in the digital art world.

///

///

**FIRST CLAIM FOR RELIEF**

**(Copyright Infringement against all Defendants, and Each)**

51.　Plaintiff incorporates and re-alleges the allegations contained in paragraphs 1-50 of this Complaint as if fully set forth herein.

52.　Whitley alleges that Defendants, and each of them, had access to the Subject Design stemming from Whitley's collaboration and involvement as co-creator of the Caked Apes NFT project.

53.　Whitley's authorization to use the Subject Design was contingent on receiving his agreed upon portion of revenue from the Caked Apes NFT project and WTF.Industries receiving its share, and his ongoing involvement with and management of the Caked Apes NFT project. When WTF.Industries did not receive its agreed-upon share, his authorization was revoked.

54.　Due to Defendants' acts of infringement, Whitley suffered substantial damages to his professional reputation and opportunities.

55.　Due to Defendants' acts of infringement, Whitley has suffered general and special damages in an amount to be established at trial.

56.　Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Design. As such, Whitley is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Whitley's rights in the Subject Design in an amount to be established at trial.

**SECOND CLAIM FOR RELIEF**

**(Vicarious and/or Contributory Copyright Infringement against all**

**Defendants, and Each)**

57.　Whitley incorporates and re-alleges the allegations contained in paragraphs 1-56 of this Complaint as if fully set forth herein.

58.　Whitley is informed and believes and thereon alleges that Defendants

1  knowingly induced, participated in, aided and abetted in, and profited from the illegal

2  reproduction and/or subsequent sales of NFTs featuring the Subject Design alleged

3  herein.

4       59.    Whitley is informed and believes and thereon alleges that Defendants,

5  and each of them, are vicariously liable for the infringement alleged herein because

6  they had the right and ability to supervise the infringing conduct and because they

7  had a direct financial interest in the infringing conduct.

8       60.    By reason of the Defendants', and each of their acts of contributory and

9  vicarious infringement as alleged above, Whitley has suffered and will continue to

10  suffer substantial damages to his professional reputation and opportunities in an

11  amount to be established at trial, as well as additional general and special damages,

12  in an amount to be established at trial.

13       61.    Due to Defendants', and each of their acts of copyright infringement as

14  alleged herein, Defendants, and each of them, have obtained direct and indirect

15  profits they would not otherwise have realized but for their infringement of the

16  Subject Design. As such, Whitley is entitled to disgorgement of Defendants' profits

17  directly and indirectly attributable to Defendants' infringement of Whitley's rights in

18  the Subject Design, in an amount to be established at trial.

19                      **THIRD CLAIM FOR RELIEF**

20            **(Negligent Misrepresentation against Defendant Han)**

21       62.    Whitley incorporates and re-alleges the allegations contained in

22  paragraphs 1-61 of this Complaint as if fully set forth herein.

23       63.    Whitley alleges that, at the time Defendant Han represented to Whitley

24  that 25% of revenue from the initial launch followed by 60% of all revenue earned

25  through secondary sales and 60 NFTs would be sent to him, Han did not have

26  reasonable grounds to believe those representations were true.

27       64.    Han's assertions as to the revenue split were material to Whitley's

28  decision to host the Pixel Tots project on the Art Discord and provide marketing and

promotional services for it.

65. Whitley did not have knowledge of Han's misrepresentations and omissions as to the foregoing issues, and reasonably and justifiably relied on her false and incomplete statements in providing marketing services and the use of the Art Discord to support the Pixel Tots NFT project.

66. As a direct and proximate result of Han's misrepresentations and omissions, Whitley agreed to, and performed said marketing and promotional services for the Pixel Tots NFT project, resulting in high sales volumes but preventing Whitley from engaging with other projects at the same time.

67. Whitley, in addition to the unpaid revenue from the Pixel Tots NFT launch, was damaged in an amount to be proven at trial.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**(Negligent Misrepresentation against Defendants Maguire, Nygard, and Wiriadjaja)**

68. Plaintiffs incorporate and re-allege the allegations contained in paragraphs 1-67 of this Complaint as if fully set forth herein.

69. Whitley alleges that, at the time Defendants Maguire, Nygard, and Wiriadjaja represented to Whitley that 10% of revenue from the Caked Apes NFT project (both primary sales and secondary royalties) would be sent to Whitley and 30% of revenue from primary sales of the Caked Apes NFT project would be sent to WTF.Industries and 45% of secondary sale royalties of the Caked Apes NFT project would be sent to WTF.Industries, Defendants Maguire, Nygard, and Wiriadjaja did not have reasonable grounds to believe those representations were true.

70. Defendants Maguire, Nygard, and Wiriadjaja's assertions related to the revenue split were material to Whitley's decision to launch the Caked Apes NFT project and use his intellectual property for it.

71. Whitley did not have knowledge of Defendants Maguire, Nygard, and Wiriadjaja's misrepresentations and omissions as to the foregoing issues and

reasonably and justifiably relied on her false and incomplete statements in agreeing to launch the Caked Apes NFT project and use his intellectual property for it.

72.     As a direct and proximate result of Defendants Maguire, Nygard, and Wiriadjaja's misrepresentations and omissions, Whitley agreed to use his intellectual property in and support the launch of the Caked Apes NFT Project, resulting in enormous sales but preventing Whitley from pursuing other opportunities at the time.

73.     Whitley was damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (Breach of Implied Contract against Defendants)

74.     Plaintiffs incorporate and re-allege the allegations contained in paragraphs 1-73 of this Complaint as if fully set forth herein.

75.     Whitley, WTF.Industries, and Defendants were engaged, collectively, in a venture to earn profit and share loss. Third parties who had dealings with them and would have been aware of each's public social media posts would reasonably have understood they were engaged in business together – promotion of first the Art Discord and its artists and projects and later related to the Pixel Tots and Caked Apes NFT projects. Accordingly and pursuant to California Corporations Code § 16101(9), Plaintiffs and Defendants were in an implied partnership.

76.     As such, California Corporations Code § 16103(b) provides a number of duties which govern the relation of Plaintiffs and Defendants' implied partnership, specifically stating that the partnership agreement may not "unreasonably restrict the right of access to books and records…" and "eliminate the duty of loyalty…" among other imposed duties.

77.     Defendants breached the implied partnership agreement by, *inter alia*:

- Removing Whitley from the Art Discord on January 30, 2022 and not returning control or reinstating him - preventing Whitley from accessing his stored client lists, customer engagement data, future projects, and collected assets;

- Removing Whitley from the Caked Apes social media profiles and refusing access;
- Failing to distribute to Whitley his portion of revenue from the Pixel Tots NFT project;
- Failing to distribute to WTF.Industries its portion of revenue from the Caked Apes NFT project.

78. As a proximate cause of Defendants' breach of the implied partnership agreement, Plaintiff has been damaged in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty against Defendants)

79. Plaintiffs incorporates and re-alleges the allegations contained in paragraphs 1-78 of this Complaint as if fully set forth herein.

80. Plaintiffs and Defendants were engaged, collectively, in a venture to earn profit and share loss. Third parties who had dealings with them and would have been aware of each's public social media posts would reasonably have understood they were engaged in business together. Accordingly, Plaintiffs and Defendants were in an implied partnership.

81. As such, California Corporations Code §§16404(a)-(f) provides a series of duties that are owned between Plaintiffs and Defendants including a duty of care, a duty of loyalty, and an obligation of good faith and fair dealing.

82. Defendants breached these duties by, *inter alia*:

- Removing Whitley from the Art Discord on January 30, 2022 and not returning control or reinstating him - preventing Whitley from accessing his stored client lists, customer engagement data, future projects, and collected assets;
- Removing Whitley from the Caked Apes social media profiles and refusing access;
- Failing to distribute to Whitley his portion of revenue from the Pixel

Tots NFT project;

- Failing to distribute to WTF.Industries its portion of revenue from the Caked Apes NFT project.

83.    Defendants are intimately familiar with the Art Discord, the art community that uses it, the projects that are being developed on it, and how much the community depends on access to Whitley and Whitley's assurances as to the value of the assorted projects. Defendants have each acknowledged how vital Whitley's contribution and involvement is because of the general association of the digital art and NFT world with Whitley.

84.    Additionally, Defendants' conduct impacted the Art Discord, which has significant independent value and future projects associated with it. By preventing Whitley from accessing the Art Discord, the user community is losing one of the prime assets they bargained for when they joined or bought any NFTs sold independently by Whitley. Defendants also have depressed the prices of NFTs sold by artists promoted by the Art Discord and harmed their resale value, which negatively impacts WTF.Industries revenues for existing and future projects. Accordingly, Defendants' breaches of their fiduciary duties to Plaintiffs have directly and proximately damaged Plaintiffs in the firm of lost profits, opportunities for future projects, and other related damages.

85.    As a direct and proximate cause of Defendants' conduct, Plaintiffs have been damaged in an amount to be proven at trial.

86.    Defendants' conduct will cause further damages to Plaintiffs until such time as Defendants honor their fiduciary duties. The longer Whitley is kept locked out of the Art Discord and away from the community he founded, the more damage that will be done, both as the prices of community-sold NFTs will be harmed, but similarly, the reputation and goodwill of the Art Discord and community will be harmed because part of the rights and benefits of membership are access to Whitley and his work and without those, the community and Plaintiff's main collectors will

1   hold him personally responsible.

2                    **SEVENTH CLAIM FOR RELIEF**

3        **(Dissolution of Implied Partnership against Defendants)**

4        87.    Plaintiffs incorporates and re-alleges the allegations contained in

5   paragraphs 1-86 of this Complaint as if fully set forth herein.

6        88.    Plaintiffs and Defendants were engaged, collectively, in a venture to

7   earn profit and share loss. Third parties who had dealings with them and would have

8   been aware of each's public social media posts would reasonably have understood

9   they were engaged in business together. Accordingly, Plaintiff and Defendants were

10  in an implied partnership.

11       89.    As such, California Corporations Code §§16405(b) provides a series of

12  bases on which a partner of an implied partnership may maintain an action against a

13  partner, including but not limited to "[t]he partner's right to compel a dissolution and

14  winding up of the partnership business under Section 16801…" and "[t]he partner's

15  right on dissociation to have the partner's interest in the partnership purchased

16  pursuant to Section 16701 or 16701.5…"

17       90.    Defendants' actions have unreasonably frustrated the economic purpose

18  of the implied partnership described herein, and engaged in conduct relating to the

19  partnership business that makes it not reasonably practicable to carry on the business

20  in partnership with Defendants. Specifically, by deleting the Art Discord and

21  preventing the community from accessing Plaintiff, Defendants have prevented the

22  Art Discord's community from accessing one of the prime assets they bargained for

23  when they joined the Art Discord or bought any NFTs sold by Whitley. Defendants

24  also have depressed the prices of NFTs sold by artists promoted by the Art Discord

25  and harmed their resale value, which negatively impacts Plaintiffs' revenues for

26  existing and future projects. Therefore, it is not otherwise reasonably practicable to

27  carry on the partnership business.

28       91.    Accordingly, Plaintiffs are entitled to dissolution of the partnership and

a winding up of its affairs, pursuant to California Corporations Code §16801 *et seq*. and seek a judicial order for such dissolution to occur.

## EIGHTH CLAIM FOR RELIEF

### (Unjust Enrichment against Defendants)

92.     Plaintiffs incorporate and re-allege the allegations contained in paragraphs 1-91 of this Complaint as if fully set forth herein.

93.     Plaintiffs conferred upon Defendants economic and noneconomic benefits, in the form of revenue from the sales and resales of the Pixel Tots and Caked Apes NFT projects, as well as access to the Art Discord, respectively.

94.     Defendants' financial and other benefits are a direct and proximate result from their unlawful and inequitable conduct described in this Complaint.

95.     It would be inequitable and unjust for Defendants to be permitted to retain any of the unlawful proceeds resulting from their illegal and inequitable conduct.  As alleged in this Complaint, Defendants have been unjustly enriched as a result of wrongful conduct. Plaintiffs are accordingly entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such practices.

## NINTH CLAIM FOR RELIEF

### (Conversion against Defendants)

96.     Plaintiffs incorporate and re-allege the allegations contained in paragraphs 1-95 of this Complaint as if fully set forth herein.

97.     The revenue from the Pixel Tots and Caked Apes NFT launches that had been agreed by Plaintiffs and Defendants to go to Plaintiff Whitley or Plaintiff WTF.Industries was and is Plaintiffs' property.

98.     Further, the Art Discord and all data contained therein is Plaintiff Whitley's was and is Plaintiff Whitley's property.

99.     Defendants intentionally and substantially interfered with Plaintiffs'

property by withholding the revenue that was agreed to be Plaintiffs' and Plaintiff's Discord and the information and data contained therein.

100. Plaintiffs did not consent to Defendants taking any of the property specified in this Complaint for their personal or any other use except as specified herein.

101. Defendants have not returned any of that property to Plaintiffs.

102. Plaintiffs have been damaged in an amount to be proven at trial as a result of Defendants' actions in converting and misappropriating Plaintiffs' property.

103. In addition, Plaintiffs' damages are ongoing and increasing due to the loss of value of goodwill associated with the Art Discord and the lowered ability to profit off of the NFT community Whitley developed there.

## TENTH CLAIM FOR RELIEF

### (Defamation against Maguire and Nygard)

104. Whitley incorporates and re-alleges the allegations contained in paragraphs 1-103 of this Complaint as if fully set forth herein.

105. In making a series of posts on social media, including, but not limited to on Twitter and the Art Discord that "someone I was asked to help build community for abused me and tried to kill me[,]" and "The caked apes collection was DMCA's by Taylor Whitley aka Taylor wtf because he chose to abuse Cake and an entire community of holders of Caked Apes" and "he hates all of you" Maguire and Nygard expressed purportedly factual statements about Whitley and implied that there was a factual basis to evaluate Whitley's mental health, friendships, and work.

106. On information and belief, Maguire used social media accounts under other people's names or identities or using fake identities, or caused other people to make similar posts and defamatory statements about Whitley on social media and on the Art Discord.

107. On information and belief, Maguire and Nygard intentionally communicated these specific statements to the public at large and individuals in the

NFT community on social media.

108. On information and belief, the individuals to whom Maguire and Nygard sent these messages to or caused messages to be sent to understood these statements to refer to Whitley, and specifically to mean that Whitley should not be associated with by others in the NFT community.

109. These statements were false. Maguire and Nygard were valued members of the Art Discord team whose opinion had been eagerly sought throughout its development and Whitley was unfailingly polite and kind to Maguire and Nygard. Maguire and Nygard's statements, and those Maguire caused others to make, are themselves express false statements of fact, and they falsely imply knowledge that had come from others and was known to people who associate with Whitley. No factual basis for these statements exist however, and more so, without access to the Art Discord, Whitley cannot know the extent to which further statements have been made about him by Maguire or others on her behalf.

110. Maguire and Nygard made the above-described defamatory statements with actual malice – i.e. with knowledge of their falsity, or, alternatively, with a reckless disregard for their falsity.

111. Maguire and Nygard made these statements without privilege or justification.

112. The above-described statements concerning Whitley directly injured him by diminishing his reputation in his profession and among his peers in the NFT art world, which has a natural tendency to lower his earnings – much of which are based on his reputation amongst his peers and NFT collectors.

113. The above-described statements convey a defamatory meaning. They harm Whitley's reputation as to lower it.

114. It was Maguire and Nygard's expectation and intent that the defamatory statements would injure Whitley economically, including by lessening his earnings.

115. Whitley has not discovered, and may not be able to discover, the extent

1  to which any lessening of his reputation has occurred as a result of Maguire and
2  Nygard's defamatory statements. Whitley may have lost out on the opportunity to
3  collaborate with other NFT artists, or to market or promote other projects in exchange
4  for shares of revenue generated – similar to how he worked with Defendants.

5  **ELEVENTH CLAIM FOR RELIEF**

6  **(Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* against Defendants)**

7  116. Plaintiff incorporates and re-alleges the allegations contained in
8  paragraphs 1-115 of this Complaint as if fully set forth herein.

9  117. Defendants, by wrongfully removing Whitley from the Caked Apes
10 social media accounts and withholding the Art Discord and the revenue generated by
11 the Pixel Tots and Caked Apes NFT launches, have engaged in unlawful and unfair
12 business practices that have injured and will continue to injure Plaintiff's business
13 and property in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*.

14 118. Plaintiff has been, and will continue to be, irreparably harmed by
15 Defendants' conduct unless Defendants are enjoined by this Court. Plaintiff has no
16 adequate remedy at law, in that the amount of damage to Plaintiff's business and
17 reputation and the diminution of the goodwill associated the Art Discord is difficult
18 to ascertain with specificity. Plaintiff is therefore entitled to injunctive relief.

19 **PRAYER FOR RELIEF**

20 **WHEREFORE**, Plaintiff prays for judgment as follows:

21 **a)** For judgment in favor of Plaintiffs on each of its claims for relief;

22 **b)** For injunctive relief; specifically, that Defendants and all of their
23 officers, agents, servants, representatives, employees, attorneys, parent and
24 subsidiary corporations, assigns and successors in interest, and all other persons
25 acting in concert with them be preliminarily and permanently enjoined from (i) acting
26 on behalf of or in any way representing themselves to be the Art Discord or its
27 predecessors with Plaintiff's consent; (ii) withdrawing any funds (whether in US
28 Dollars or in any cryptocurrency) that were earned as a result of the same of any art

project created by members of, or that was supported in any way, by the Art Discord or its predecessors without Plaintiffs' consent; and (iii) making any statements, whether anonymously or identified by any individual Defendant's name or in the name of the Art Discord or its predecessors, that defames Whitley or injures his reputation in any way;

    **c)**    An order that the implied partnership described herein be dissolved and all partnership affairs be wound up within 30 days of judgment, including all partnership records be turned over to Plaintiff and that affairs be settled and distribution made to the partners in a proportion that will be proven at trial;

    **d)**    An award in favor of Plaintiff and against Defendants for all damages suffered as a result of Defendants' wrongdoing, in an amount to be proven at trial;

    **e)**    For compensatory and punitive damages in an amount to be proven at trial;

    **f)**    For disgorgement of Plaintiffs' portion of all revenue obtained from, or in connection with, the Pixel Tots NFT project and the Caked Apes NFT project on or after January 1, 2022, and lost profits Plaintiff would have attained had his access not been deleted;

    **g)**    For attorneys' fees;

    **h)**    For pre-judgment and post-judgment interest;

    **i)**    For costs of this suit; and

    **j)**    For such other relief as the court deems just and proper.

///
///
///
///
///
///
///

Plaintiffs hereby demand trial by jury on all issues pursuant to Fed. R. of Civ. Proc. 38 and the 7th Amendment to the United States Constitution.

Dated:  March 18, 2022                   **ARENTFOX SCHIFF LLP**


By:  */s/ John S. Purcell*
    John S. Purcell
    Jake Gilbert
    Attorneys for Plaintiffs
    TAYLOR WHITLEY and
    WTF.INDUSTRIES, LLC